IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES L. WAYNE,<br><br>    Plaintiff,<br><br>  vs.<br><br>WELLPATH, Medical Provider; SMART COMMUNICATIONS, Tablet Provider; DOUGLAS COUNTY CORRECTIONS DEPT, Jail/Medical Dept.; CITY OF OMAHA NEBRASKA; MICHEAL MYERS, Director, et al; WINTERS, Dr., Attending Physician et al; and DEPARTMENT OF COMMERCE,<br><br>    Defendants. | 8:24CV373<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on Plaintiff James L. Wayne's amended complaint filed on January 22, 2026. Filing No. 18. Plaintiff is an inmate and was granted leave to proceed in forma pauperis. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.

### I. SUMMARY OF AMENDED COMPLAINT

  Plaintiff's amended complaint, liberally construed, alleges as follows.

  Plaintiff was incarcerated at the Douglas County Department of Corrections (DCDC)[1] from January 3, 2024, until August 2025. Under DCDC policies, unit officers are the first contact for inmates requesting medical assistance, followed by request forms and, if necessary, grievances. In June

---

[1] Plaintiff refers to this entity as the Douglas County Corrections Department. The correct name is Douglas County Department of Corrections.

and July 2025, Plaintiff approached several unit officers and medical personnel with complaints of severe abdominal pain. He also submitted inmate requests by tablet.

Beginning on July 2, 2025, and continuing every day thereafter until July 12, 2025, Plaintiff's urine contained copious amounts of blood. By July 12, 2025, Plaintiff was growing weaker, having severe pain, and losing consciousness. A unit manager noticed Plaintiff's deteriorating health and notified the medical department. Micheal Myers, the DCDC Director, and Dr. Winters, the Wellpath physician assigned to DCDC, requested a urine sample. Plaintiff's urine sample "was pure blood." Filing 18 at 3.

Plaintiff was rushed to the University of Nebraska Medical Center (UNMC), where one and one-half liters of blood was removed from his bladder. Plaintiff was prescribed medications and scheduled for a follow up evaluation. Wellpath, by and through its agent, Dr. Winters, provided no face-to-face medical care to evaluate Plaintiff's needs, did not provide the medication prescribed by UNMC, did not change Plaintiff's catheter, and did not assure that employees under his supervision provided adequate health care. Filing 18 at 5. Plaintiff had to barter his meals for medicine. Wellpath was replaced by Wexford, but the lack of medical care continued until August of 2025. Filing 18 at 5.

At some point, Plaintiff's medical care included biopsies, and laboratory, MRI, and ultrasound testing. But the testing results were not disclosed to Plaintiff, and until January 2026, he was not aware he had a bladder tumor. He is currently being treated for infections and continues to pass blood, although not as heavily. Filing 18 at 5-6.

Plaintiff alleges Smart Communications regulates Plaintiff's data. Although not precisely identified, it appears the data at issue is information

being electronically conveyed and stored on tablets as DCDC moves toward a paperless environment. Plaintiff alleges Smart Communications does not maintain the data in a manner that allows inmates to retrieve it later, and the data cannot be transferred with the inmate to other facilities. Plaintiff's requests to retrieve the data have been denied. Filing No. 18 at 4.

Plaintiff alleges Myers contracted with Smart Communications to decentralize the administration of DCDC's policies, services, and liabilities, and thereby facilitate zero accountability for DCDC's conduct. Filing 18 at 2. He alleges the City of Omaha Department of Commerce is aware of this "illegal marriage" between Smart communications and Myers. Filing 18 at 4. He claims Myers and the City of Omaha Department of Commerce have harmed his physical and mental health by sowing distrust and creating unwarranted duress and anguish. Filing 18 at 6-7.

Plaintiff alleges DCDC is lying about his allegations, and it is purposefully hiding evidence or denying its existence. Specifically, he alleges inmates were not given notice that DCDC was transitioning to become paperless by using tablets; it falsely denied receiving 25-30 inmate requests from Plaintiff; DCDC officers do not open their tablets for days, weeks, and even months; Plaintiff's legal paperwork was confiscated during shakedowns and despite its denials, DCDC uploaded that information and can access it; and by requiring the use of tablets to which Plaintiff has no access, Plaintiff has been denied the ability to establish the "paper trail" to prove his case. He claims DCDC will defend using tablets by stating the use of paper poses a risk of synthetic drugs entering the prison, but this claim is false. Instead, he claims the use of tablets is intended to circumvent and violate constitutional protections. Plaintiff demands a preservation order and subpoena duces tecum for production of his documents. Filing 18 at 11-12.

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for

relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

Plaintiff sues Wellpath, Smart Communications, DCDC, the City of Omaha, the Omaha Department of Commerce, Myers, and Dr. Winters. To recover under 42 U.S.C. § 1983, Plaintiff must show "the conduct complained of was committed by a person acting under color of state law," and this conduct deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

**A. City of Omaha and its Department of Commerce**

Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed.R.Civ.P. 17(b). Under Nebraska law, a city of the metropolitan class may sue and be sued, Neb. Rev. Stat. § 14–101, but not its individual departments. A city department is an agency of the city and has no separate legal status under Nebraska law. *Hood-Bey v. Brown*, No. 8:24CV474, 2025 WL 1167837, at *12 (D. Neb. Apr. 22, 2025) (collecting cases). So, any claim against the Department of Commerce for the City of Omaha is a claim against the city.

To state a claim under 42 U.S.C. § 1983 against the City of Omaha, Plaintiff must identify a governmental policy or custom that was the "moving force" behind a constitutional violation that caused Plaintiff's alleged injury. *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Plaintiff's amended complaint alleges only that the Omaha Department of Commerce was aware of the contract between Myers and Smart Communications. There are no allegations that any City of Omaha policy or custom harmed Plaintiff or somehow made the City of Omaha

responsible for Douglas County's decision to contract with Smart Communications. Plaintiff's claims against the City of Omaha and its Department of Commerce must be dismissed for failure to state a claim.

### B. DCDC, Myers, and Douglas County

As the Court previously stated, DCDC is not a distinct legal entity subject to suit. Filing 17 at 5 (citing *De La Garza v. Kandiyohi Cnty. Jail*, Corr. Inst., 18 F. App'x 436, 437 (8th Cir. 2001)). Any claim against DCDC must be dismissed.

Plaintiff has sued Myers in his official and individual capacities. A lawsuit against a public employee in his official capacity is a suit against the public employer. C*ampbell v. State of Iowa, Third Jud. Dist. Dep't of Corr. Serv.*, 702 F.3d 1140, 1141 (8th Cir. 2013) (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999)). So, Plaintiff's claims against Myers, in his official capacity, are claims against Douglas County.

To prevail on a claim against Douglas County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). The only policy identified in Plaintiff's amended complaint is DCDC's use of tablets for submitting, responding to, and storing inmate requests and documentation. Plaintiff does not allege that this electronic system failed to deliver his requests for medical assistance to the prison's supervisory and medical staff, or that his medical care was denied, hindered, or delayed because DCDC used tablets for submitting medical care requests.

Plaintiff appears to be claiming DCDC's paperless policy has caused him mental distress because using tablets rather than paper for DCDC documentation hinders the retrieval and accumulation of documents for proving his § 1983 claim. But even if the Court assumes Plaintiff's electronic

6

file at DCDC cannot be obtained during the discovery process, to prove a due process claim for loss or destruction of evidence, Plaintiff must allege facts showing the destroyed or missing evidence was material to his case, and the failure to preserve it was due to bad faith on the part of the government. *Arizona v. Youngblood*, 488 U.S. 51 (1988). Plaintiff's amended complaint does not describe the alleged unavailable evidence or its importance to his claims, and he has alleged no facts showing it is lost, missing, or destroyed due to bad faith conduct by DCDC or its personnel.

Plaintiff has not sufficiently alleged damages caused by a DCDC policy or custom, or its deliberately indifferent failure to train or supervise its personnel. Plaintiff's claims against DCDC and Douglas County, Nebraska, must be dismissed.

Plaintiff also sues Myers in his individual capacity, claiming he has a professional responsibility to protect the health and welfare of DCDC inmates, Filing 18 at 3-4. To state a § 1983 claim, a plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). The general supervisory responsibilities of the prison director are not sufficient to establish personal liability under 42 U.S.C. § 1983. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994) ("[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"); *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (holding prison warden was not personally liable for the actions of the prison employees). Any § 1983 claim against Myers, in

7

his individual capacity, for conduct performed by employees under his supervision must be dismissed.

In addition to the supervisory allegations, Plaintiff alleges Myers implemented policies and procedures for requesting medical care at DCDC, Filing 18 at 2, and along with Dr. Winters, ordered collection of Plaintiff's urine sample on July 12, 2025. Filing 18 at 3. He alleges that after contacting the City of Omaha (which allegedly knew a contract between DCDC and Smart Communications was "an illegal marriage of business," Filing 18 at 5), Myers contracted with Smart Communications for tablets to facilitate DCDC's communications. Plaintiff claims the Smart Communications system decentralized the administration of DCDC, Filing 18 at 2, and has allegedly barred Plaintiff's ability to collect documents for this case. Filing 18 at 4. These allegations do not support the violation of any constitutional right. Plaintiff has failed to state a § 1983 claim against Myers in his individual capacity.

### C. Smart Communications

Plaintiff sues Smart Communications, which is a private, not governmental, entity. When considering liability under 42 U.S.C. § 1983, a private entity can be considered a state actor "in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (internal citations omitted). The state-actor question is a 'necessarily fact-bound inquiry. *Doe v. N. Homes, Inc.*, 11 F.4th at 637 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). The court considers whether the claimed deprivation resulted from the exercise of a right or privilege having its source in state authority, and whether under the facts of this case, it is appropriate to consider the private entity as a state actor. *Id.* at 637-38.

Based on Plaintiff's allegations, Smart Communications was not compelled to provide the electronic communications system within DCDC, and Plaintiff has alleged no facts explaining what specific role it played in facilitating DCDC's paperless process for submitting inmate requests. Plaintiff has therefore failed to allege facts showing Smart Communications was a state actor for the claims raised in his amended complaint. And even had Plaintiff sufficiently alleged Smart Communications acted under color of state law, he alleges no facts indicating what, specifically, Smart Communications did or how that conduct violated Plaintiff's constitutional rights. Plaintiff has failed to state a § 1983 claim against Smart Communications.

### D. Wellpath and Dr. Winters

Plaintiff has sued Dr. Winters in his official and individual capacities. Dr. Winters is employed by Wellpath, a private entity that supplies medical care within the DCDC. Private employees and contractors who provide medical care to inmates within a jail or prison are considered state actors for the purposes of 42 U.S.C. § 1983, (*Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 617 (8th Cir. 2021) (collecting cases)), and an official capacity claim against a private entity performing as a state actor is a suit against the entity. *Cannady v. Cradduck*, 2016 WL 4432704, at *1–2 (W.D. Ark. Aug. 18, 2016) (holding that official capacity claims are against the contractor).

As to his claims against Wellpath and Dr. Winters, in his official capacity, Plaintiff must allege a Wellpath policy or custom, or its deliberately indifferent failure to train or supervise its staff, violated Plaintiff's constitutional rights. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007); *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Plaintiff's amended complaint contains no such allegations. While Plaintiff appears to claim Wellpath is responsible for the actions of its "agent," Dr. Winters, "it is well settled that § 1983 does not impose respondeat superior

liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). Plaintiff has failed to state a claim against WellPath (also identified as Dr. winters, in his official capacity)..

Plaintiff has also sued Dr. Winters, in his individual capacity. Plaintiff claims Dr. Winters, like Myers, was professionally responsible for his health. Filing 18 at 2, 5. However, Dr. Winters is responsible for his own action and is not vicariously liable under § 1983 for the alleged actions and inactions of his medical staff.

Liberally construed, Plaintiff alleges Dr. Winters violated his Eighth Amendment rights by failing to promptly diagnose and treat the bleeding in his urinary tract. Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials are forbidden from unnecessarily and wantonly inflicting pain on an inmate by acting with "deliberate indifference" toward serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Deliberate indifference "is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). A claim of deliberate indifference to medical needs has both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

When alleging a deprivation of medical care, the inmate must show (1) an objectively serious medical need and (2) the defendants knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir. 2006). A medical need is objectively serious "if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson

would easily recognize the necessity for a doctor's attention." *Hancock v. Arnott*, 39 F.4th 482, 486 (8th Cir. 2022) (quoting *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017). The effects of delayed treatment are considered when evaluating the existence of an objectively serious medical need. *Id*. As to the subjective element, the Plaintiff must plead that each defendant acted with a sufficiently culpable state of mind. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). A plaintiff must show a prison official knew of and disregarded the objectively serious medical need. *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002).

Here, Plaintiff alleges he had serious bleeding. As described in Plaintiff's amended complaint, Plaintiff's injury is objectively serious, and for the purposes of initial review, the objective component is met.

To prove the subjective component, Plaintiff must present facts showing Dr. Winters knew Plaintiff was severely ill and deliberately chose not to provide treatment. "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (cleaned up)). Here, Plaintiff alleges he complained of severe abdominal pain to unit and medical staff in June and July of 2025, both directly and electronically by tablet, with no response. He claims on July 7, 2025, he began passing copious amounts of blood in his urine daily, becoming weaker and eventually passing out on July 12, 2025. That day, a unit officer contacted "medical," and Dr. Winters and Myers responded by requesting a urine sample. That sample contained blood, and Plaintiff was immediately transported to UNMC for emergency treatment. He was prescribed medication and at some point, had biopsies, and laboratory, MRI,

11

and ultrasound testing. Plaintiff claims, however, that Dr. Winters "denied Plaintiff medication, changing of [his] catheter, or any of the physical 'human-to-human,' 'face-to-face' interaction to properly diagnose medical needs, as Plaintiff was and still does to this moment pass blood in his urine though not as heavily." Filing 18 at 4-5 (spelling corrected). He claims he was released from DCDC without being told he has a bladder tumor, or the results of his medical tests.

Accepting Plaintiff's allegations as true, no later than July 12, 2025, Dr. Winters knew Plaintiff was having serious medical problems, and while he secured emergency care for Plaintiff at UNMC, he thereafter failed to either provide the medical care prescribed by UNMC or render his own personal and professional evaluation, care, and treatment to Plaintiff. Liberally construed, Plaintiff has alleged an Eighth Amendment claim against Dr. Winters, in his individual capacity.

Plaintiff's request for a subpoena duces tecum to obtain copies of relevant records is premature. Discovery will not be initiated until the amended complaint is served and the Court enters a case scheduling order.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Plaintiff's claims against Wellpath, Smart Communications, DCDC, the City of Omaha, the Omaha Department of Commerce, Micheal Myers, in his official and individual capacities, and Dr. Winters, in his official capacity, must be dismissed. Plaintiff has, however, stated an Eighth Amendment claim against Dr. Winters, in his individual capacity.

Accordingly,

IT IS ORDERED

1. Only Plaintiff's Eighth Amendment claim against Dr. Winters, in his individual capacity, may proceed.

2. The Clerk shall correct the name of defendant Douglas County Corrections Department to Douglas County Department of Corrections.

3. Plaintiff's claims against Wellpath, Smart Communications, Douglas County Department of Corrections, the City of Omaha, the Omaha Department of Commerce, Micheal Myers, in his official and individual capacities, and Dr. Winters, in his official capacity, are dismissed.

4. The Clerk of Court is directed to terminate Wellpath, Smart Communications, Douglas County Department of Corrections, the City of Omaha, the Omaha Department of Commerce, Micheal Myers, in his official and individual, and Dr. Winters, in his official capacity, as defendants. The Clerk of Court is further directed to update the caption to reflect that "Dr. Winters, in his individual capacity," is the sole defendant.

4. For service of process on Dr. Winters, in his individual capacity, the Clerk of Court is directed to complete a summons form and a USM-285 form for Dr. Winters using the following address:

Douglas County Department of Corrections
710 S. 17th St.
Omaha, NE 68102

and forward them together with a copy of the amended complaint, Filing No. 18, and a copy of this Memorandum and Order to the United States Marshals Service.

5. The Marshals Service shall serve Dr. Winters by certified mail or other authorized method of service at the address shown above. *See* Federal Rule of

Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

6. For service by certified mail or designated delivery service, the Marshals Service shall serve the defendant within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. *See* Neb. Rev. Stat. § 25-505.01(1).

7. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

8. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process on Dr. Winters.

9. Plaintiff is hereby notified that failure to obtain service of process on Dr. Winters within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

10. The Clerk of Court is directed to set a pro se case management deadline in this case using the following text: **June 8, 2026**: service of process to be completed.

11. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 9th day of March, 2026.

BY THE COURT:

_____
John M. Gerrard
Senior United States District Judge